Nevada County v. Hicks et al.

NEVADA COUNTY V. HICKS ET. AL.

1. CHANCERY: *Jurisdiction to relieve from penalties and forfeitures.. Transfer of case.*

   To retrieve against penalties and forfeitures is one of the ordinary grounds of equity jurisdiction; and though by Statute a remedy in many cases may now be had at law, courts of equity still retain this. jurisdiction. And when there is an equitable defense to an action at law on a penal bond, the cause may be transferred to the equity· docket.

2. PENALTY—LIQUIDATED DAMAGES. *Bonds of bridge contractors.*

   The sum specified in the bond of a bridge contractor, for the performance of his contract, required by the Act of March 6th, 1875, is a· penalty, and not liquidated damages.

APPEAL from *Nevada* Circuit Court.
Hon. G. D. ROYSTON, Special Judge.

STATEMENT.

This was an action at law upon a penal bond, instituted in the Nevada Circuit Court, December 17th, 1878; the complaint charging, in substance, that on the 14th day of August, 1876, the sheriff of Nevada county, under the orders of the county court, let to the defendants a contract for building a county bridge over Dorcheat creek, in said county, they being the lowest bidders therefor, at the price·

Nevada County v. Hicks et al.

of $1,500. That the defendants entered into bond to the State of Arkansas, for the use of said county, in the sum of $1,500, conditioned to be void if they built the bridge by the first day of November, 1876, according to the plan and specifications which had been made and filed by certain commissioners, appointed by the court, and approved by the court. That afterwards, on the first day of November, 1876, the commissioners, under the directions of the county court, examined the bridge which the defendants had built, and found that it had not been built according to the plan and specifications, and therefore rejected said bridge, and reported their finding and action to the county court, specifying the defects as follows: The pine lumber in the bridge was one-third short of that prescribed by the contract, and one-third of the pine lumber in the sleepers, flooring and hand-railing was sap, and not heart, as required by the contract. That on the thirteenth day of November, 1876, said county court convened in special session, at the court house in said county, in pursuance of notice therefor given by the county judge of said county, and posted as the law directs; and in said session adopted said report, and discharged the commissioners, and rejected and refused to receive said bridge; declared the defendant's bond forfeited, and ordered suit to be instituted for the penalty. The complaint then negatives the performance of the conditions of the bond and the payment of the penalty, and demands judgment for the penalty and interest.

The bond, and all the proceedings of the county court and of the commissioners, are exhibited.

The answer of the defendants admitted the contract and bond as stated in the complaint, and asserted that they built the bridge within the time and according to the plan and specifications contained in the contract; and, assuming that said special term of the court was illegal, denied that the county

court ever rejected the bridge, or authorized suit on the bond ; and asserted that the bridge was reasonably worth, when completed, thirteen hundred dollars ; that said county court d hanever ordered said bridge to be taken down or removed ; that it still remained where it was erected ; that the travelling public had used it continually, at all times since it was completed ; that the county had accepted and enjoyed the benefits and advantages of it ever since it was built ; had never ordered or directed another bridge to be built in lieu of it ; but, to the contrary, permitted it to remain and be used by the travelling public. And they insisted that the county was liable and bound to pay them the sum of $1,300, with interest at six per cent. per annum from the first day of November, 1876, which it had neglected and refused to pay ; and they prayed judgment for that amount and interest against the county.

With this answer they filed their motion to transfer the cause to the equity docket, which was done against the plaintiff's objections.

To the answer the plaintiff replied, setting up in preclusion of the defense and in bar of the relief prayed for, that the special county court of November 13th, 1876, had rejected the bridge and refused to receive it, and declared the bond forfeited, "in accordance with the Statute in such cases made and provided ; which order still remains in full force and effect, and from which said defendants have never appealed, nor otherwise in lawful manner objected to. Wherefore, the plaintiff submits that they are estopped to deny their liability on said bond, or the legal form and effect of said order and judgment of said county court."

The cause was heard upon the pleadings and exhibits, and the admissions of the plaintiff at the bar, that the facts stated in the answer were true, except where they contro-

verted the allegations of the complaint. The court found the facts as stated in the answer, and decreed to defendants the relief prayed for. The county appealed.

*Dan W. Jones*, for appellant.

If *sec.* 590, *Gantt's Dig.*, was not repealed by Act of Feb. 5, 1875 (*Acts* 1874-5, *p.* 145), and *Art. VII, Sec.* 31, *Const.* 1874, then the judgment of the county court, under *sec.* 4, *Acts* 1874-5, *p.* 259, was a final judgment, and, appellees having failed to appeal, are estopped. *Herman on Estoppel, pp.* 97-8 ; *Ellis v. Clark et al.*, 19 *Ark.*, 422 ; *Bauman* v. *Bauman*, 18 *Ib.*, 332-3.

If said section 590 was repealed, the entire action of the county judge was a nullity ; and the Circuit Court had no jurisdiction, but should have dismissed for want of jurisdiction. *Levy* v. *Shinman*, 6 *Ark.*, 183.

If the action of the county judge was regular, and the Circuit Court had jurisdiction, then appellant should have had judgment for the full amount of the bond.

If the amount specified in the bond was *liquidated damages*, then appellant should have had judgment for the full amount ; but if for a *penalty*, then for the amount of the bond *less* the value of the bridge, as agreed upon. In no case should the appellees have had judgment. *Graham* v. *Bickham*, 2 *Yeats* (*Penn.*,) 32 ; *S. C.*, 4 *Dallas*, 148, *cited in* 1 *Am. Dec.*, 331 *et seq.; Dennis* v. *Cummins*, 3 *John. Cases*, 297, *cited in* 2. *Am. Dec.*, 160 ; *Perkins* v. *Lyman*, 11 *Mass.*, 16 ; *also in* 6 *Am. Dec.*, 158 ; *Greenl. Ev. Sec.*, 257 *et seq.* ; 2 *Kent Com.*, 628, *note 1 ; Bouv. Law Dict.*, *title Liquidated Damages; 2. John. Ch. Rep.*, 527 ; 14 *Ark.*, 315 ; 2 *Burrows' Rep,*, 1351 ; 4 *Burrows' Rep.*, 2225-2228 ; *2 T. R.*, 388-89.

*Sec.* 4, *Acts* 1875, *sup.*, certainly means that bridge contractors shall be held to a strict performance of their

contracts; otherwise they could build any kind of a structure, worth something, but not at all according to contract, and then obtain judgment against the county for its value, without suffering any penalty for their breach of contract.

*Williams and Battle*, for appellees.

The $1,500 was a penalty, and not liquidated damages. *Taylor* v. *Sandifur*, 7 *Wheat*, 13; *Merrill* v, *Merrill*, 15 *Mass.*, 487; *Graham* v. *Bickham*, 4 *Dallas*, 149; 3 *Parsons on Cont.* (*5th ed.*), 156, 163, and notes.

The damages to the county by failure to build according to plans, etc., was easily ascertained. If the county had not accepted the bridge, the damage would have been the cost of tearing down and removing it, and the amount it cost the county to build one according to the plans, etc., *in excess* of fifteen hundred dollars. "*Id certum est quod certum reddi potest.*" The $1,500 was a penalty. *Hoag* v. *McGinnis*, 22 *Wend.*, 163; *Bisp. Equity*, sec. 179.

The Act, March 6th, 1875, should be construed with *secs.* 4391-4398, *Gantt's Dig. Acts* 1874-5, *p.* 258.

The action properly transferred to the equity docket. Equity will relieve against penalties, and its jurisdiction is not limited to bonds or instruments which in terms impose a penalty. *Adams' Eq.* (*4th ed.*) *marg. p.* 107-109; *Bish. Eq.*, sec. 178-9; *Story Eq.*, sec. 1301-13-14-19; *Lead. Cases in Eq.* (*4th ed.*) 2nd vol., pt. 2, *p.* 2022; *Perkins* v. *Lyman*, 11 *Mass.*, 76.

Extrinsic evidence may be admitted to show that the intention was to inflict a penalty under the pretense of compensation. 2 *Lead. Cases in Eq.*, 2nd pt. (*4th ed.*) 2060, and cases cited; *Ib.*, 2067; *Taylor* v. *Sandefur, Sup.*

The county court was held on a day not authorized by

66–38

law, and its proceedings were null and void. *Graham* v. *Parham*, 32 *Ark.*, 676.

The county court accepted the bridge, enjoyed its benefits, and the public used it. It was worth $1,300, and the county should pay for it, its value. 2 *Parsons on Cont.*, 5th ed., 523 ; *Thomas* v. *Trott*, 4 *Ala.*, 108 ; *Major* v. *McLester*, 4 *Ind.*, 591 ; *Canley* v. *Ingersoll*, 4 *Blackf.* (*Ind.*), 493 ; *Gillman* v. *Hall*, 11 *Vt.*, 510 ; *Thompson* v. *Purcell*, 10 *Allen*, 426 ; *Bowker* v. *Hoyt*, 18 *Peck*, 555 ; *Hayward* v. *Leonard*, 7 *Peck*, 181 ; *Smith* v. *First Cong. Meeting House*, 8 *Peck*, 177 ; *Chapel* v. *Hicks*, 2 *Campbell*, 214 ; *Ridgway* v. *Toran*, 2 *Md. Ch.*, 303 ; *Watchman* v. *Crooks*, 5 *Gill & J.*, 240 ; *White* v. *Oliver*, 36 *Mo.*, 93 ; *Jewell* v. *Schiveppel*, 4 *Cowen*, 564.

HARRISON, J. The cause was properly transferred to the equity side of the court. To relieve against penalties and forfeitures is one of the ordinary grounds of equity jurisdiction ; and though by Statute a remedy in many cases may now be had at law, courts of equity still retain their jurisdiction. 2 *Sto. Eq. Jur.*, sec. 1301.

That the sum in which the bond was given was designed as the penalty, and not as liquidated damages, we think there can be no question. *Section 4 of the Act of March 6th*, 1875, providing for the building of bridges on public roads, and under the provisions of which Act the contract was let, required the bond to be in the amount of the defendant's bid. The Legislature could not have intended to fix the damages in every case, for each and every breach of the condition, whether total or only partial, arbitrarily at the amount of the bid, irrespective of the real injury sustained ; for in some instances they may be merely nominal.

As to the power of the county judge to call a special term of the county court, we need not express our opinion; for as it was admitted upon the hearing that the defendants had received nothing for building the bridge, and that it was and had been ever since it was completed, in use by the public, and was worth to the county thirteen hundred dollars, the sum adjudged them, and no special injury or damage to the county from their failure to build it in strict accordance with the specifications of the contract, nor notice given them to remove it, was shown, whether the report of the commissioners of the bridge had been acted upon, and the bridge rejected by the county court or not, the defendants were entitled to be paid by the county the sum adjudged them by the decree.

The decree is affirmed.